UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RONALD C.,[1]

      **Plaintiff,**

v.

MARTIN J. O'MALLEY,
**Commissioner of Social Security,**

      **Defendant.**

Case No. 1:22-cv-2626
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Ronald C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

On March 11, 2019, Plaintiff filed his application for benefits, alleging that he has been disabled since December 31, 2014. R. 85, 98, 157–59. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Martin J. O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

upon reconsideration. R. 102–06, 108–10. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 111–12. ALJ Frederick Timm held a hearing on October 28, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 32–73. In a decision dated December 23, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 31, 2014, Plaintiff's alleged disability onset date, through September 30, 2019, the date on which Plaintiff was last insured for benefits. R. 15–27. That decision became final when the Appeals Council declined review on March 1, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 27, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 5.[3] On that same day, the case was reassigned to the undersigned. ECF No. 6. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

B.  **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

5

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.  ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 61 years old on September 30, 2019, the date on which he was last insured for benefits. R. 26. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 31, 2014, his alleged disability onset date, and that date. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetic neuropathy; status-post non-Hodgkin's lymphoma; obstructive sleep apnea ("OSA"); coronary artery disease ("CAD"); chronic fatigue syndrome due to Lyme disease; obesity; neurocognitive disorder; adjustment disorder/major depressive disorder; and anxiety disorder. R. 18. The ALJ also found that Plaintiff's headaches and history of myocardial infarction were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–20.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 20–26. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a marketing manager and general contractor. R. 26.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a hand packer, laundry laborer/folder, and an office cleaner–existed in the national economy and could be performed by Plaintiff. R. 26–27. The ALJ

therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 31, 2014, his alleged disability onset date, through September 30, 2019, the date on which he was last insured. R. 27.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 20. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17.

IV.     **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On April 1, 2019, Emelia Eiras, M.D., Plaintiff's treating physician, rendered an opinion on a three-page, check-the-box, and fill-in-the-blank form. R. 300–02 ("April 2019 opinion").[4] Dr. Eiras first examined Plaintiff on March 26, 2014 and last saw Plaintiff on January 3, 2019, noting that Plaintiff had "poor compliance" and "should be seen every 1-2 months[.]" R. 300. Dr. Eiras summarized Plaintiff's conditions as follows:

> Lyme disease since 2014. 2 attempts of suicide for severe depression. Has been on and off of antibiotics for years. Still very symptomatic with [illegible] fatigue, depression, anxiety, headaches, nausea and brain fog. Has [illegible] medicinal cannabis, antidepressants and antibiotics.

*Id*. She diagnosed chronic fatigue syndrome; chronic persistent tick born disease; major depression with significant anxiety; and diabetes mellitus type II. R. 301. Findings on physical exams were generally within the normal range although the trapezius muscles were "spastic and

---

[4] Although Dr. Eiras also issued other opinions, the Court focuses its discussion on this opinion.

8

tender[.]" *Id*. (referring also to copies of medical records). Asked to specify the "[m]aximum number of pounds that can be lifted & carried" occasionally (up to one-third of a work day), Dr. Eiras wrote in "25" pounds, commenting "too tired to carry[.]"Plaintiff could stand and/or walk up to two hours a day, but with the comment, "at times bedridden"; he could sit for less than six hours per day. *Id*. The doctor identified no other limitation. Specifically, Dr. Eiras left blank the question asking whether Plaintiff had limitations in pushing and pulling, including hand and foot controls. *Id.* Dr. Eiras also noted that Plaintiff's depression and anxiety limited his ability to peform work-related activities. *Id*.

## V.   DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC for a limited range of medium work, including the argument that the ALJ erred in discounting Dr. Eiras' April 2019 opinion. *Plaintiff's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 20. This Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in

the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

As noted, the ALJ determined that Plaintiff had the RFC to perform a limited range of medium work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he can never climb ladders/ropes/scaffolds; and must avoid concentrated exposure to extreme cold and hazards. He is limited to simple, routine tasks; and goal-oriented rather than production-paced tasks; and requires a stable workplace (with few, if any, changes of setting, processes and tools).

R. 20.

Plaintiff challenges this determination on a number of bases, including, *inter alia*, the challenge that the RFC does not accommodate Plaintiff's limitations resulting from, *inter alia*, paresthesia, fatigue, and weakness associated with his physical impairments, including neuropathy and Lyme disease; Plaintiff also complains that the ALJ improperly failed to explain—or to adequately explain—this omission. *Plaintiff's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, pp. 15–20, 22–23; *Plaintiff's Reply Brief*, ECF No. 20, p. 2. Plaintiff's challenge is well taken.

At step two of the sequential evaluation, the ALJ found, *inter alia*, that Plaintiff's diabetic neuropathy and chronic fatigue syndrome due to Lyme disease were severe. R. 18. When crafting the RFC at step four, the ALJ expressly considered these impairments and their related symptoms as follows:

> The claimant is an insulin-dependent diabetic individual, with 2018-19 A1c levels of 7.6 and 8.1; however, this condition had been present since at least 2011

10

>   (Exhibits 4F, 11F, 14F). Evidence since early 2019 referenced bilateral lower extremity neuropathy and fingertip paresthesia, and February 2019 hospital notes indicate his diabetes was poorly controlled, with Levemir started at that time (Exhibits 3F, 12F). As of 2020, the claimant was on Tresiba, metformin and Jardiance, and his A1c level was 7.8 (Exhibit 14F). Aside from diabetic neuropathy, there is no evidence of other significant diabetes-related symptoms, and *this condition is adequately accommodated by limiting the claimant to a range of work at the medium exertional level*.

R. 22 (emphasis added).

>   The claimant tested positive for Lyme[ ] disease in April 2014, but tested negative in July 2018 (Exhibits 1F, 4F). This condition was treated for 1.5 years with doxycycline (Exhibit 8F). A November 2018 consultation note indicated that the claimant's Lyme[ ] disease symptoms had resolved after a year of intravenous treatment (Exhibit 15F/30). *As this condition likely resulted in increased symptoms in other body systems, including fatigue, weakness and headaches*, the undersigned finds this condition is severe *and has been accommodated in limiting the claimant to a range of work at the medium exertional level*.

R. 23 (emphasis added). In other words, the ALJ found that the evidence established bilateral lower extremity neuropathy, fingertip paresthesia with poorly controlled diabetes, fatigue, weakness, and headaches, but concluded that these conditions were sufficiently "accommodated" by an RFC for medium exertional work. R. 22–23. However, the ALJ utterly failed to explain how medium work sufficiently addressed Plaintiff's diabetic neuropathy or the limitations flowing from that impairment. *See id.*; *see also Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

For instance, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c); *see also* SSR 83-10 ("The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of

11

medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds."). Notably, as previously detailed, Dr. Eiras opined in April 2019 that Plaintiff could, *inter alia*, only occasionally lift and carry up to 25 pounds,[5] stand and/or walk up to two hours per day, and sit less than six hours per day. R. 301. These limitations are not consistent with medium work. The ALJ expressly considered this opinion, but found it unpersuasive, reasoning as follows:

> In April 2019, Emilia Eiras, M.D., a treating physician, opined that the claimant could lift/carry 25 pounds occasionally, stand/walk up to 2 hours per day (stating that he was bedridden at times), sit less than 6 hours per day, and was further limited (without specificity) due to depression and anxiety (Exhibits 4F, 5F). In September 2020,[6] Dr. Eiras found the claimant's medications would result in only mildly troublesome side effects with difficulty focusing/concentrating for occasional periods of time (Exhibit 10F). She also found the claimant would require supine rest breaks for a total of at least 1.5-2 hours per day on a frequent basis, and found him likely to be off-task 25% or more of an 8-hour workday and absent 4+ days per month. An August 2010 statement from Dr. Eiras suggested the claimant was unable to drive, and was incapable of any type of employment now or in the future. The undersigned finds these opinions unpersuasive, as although Dr. Eiras has treated the claimant for several years, her findings are not consistent with the claimant's generally normal physical and mental status examinations, generally normal objective testing/studies and broad range of daily activities, some of which were apparently not disclosed to Dr. Eiras. For example, claimant was boating (although infrequently per his testimony), vacationing out-of-state, performing work requiring walking 6-7 miles per day and owning liquidation and telemarking businesses, regularly attending at least the liquidation warehouse and also going to the Hard Rock Casino.

R. 25.

---

[5] As previously noted, when asked to identify the maximum number of pounds that Plaintiff could occasionally lift and carry, Dr. Eiras wrote in the number "25," but also wrote next to that number "too tired to carry[.]" R. 301. This note would suggest that, in this treating doctor's opinion, plaintiff could occasionally lift 25 pounds but could not carry that weight. *See id*. However, for purposes of this opinion, the Court will assume that Dr. Eiras opined that Plaintiff could occasionally lift *and* carry 25 pounds.

[6] As this Court already noted, its discussion focuses only on Dr. Eiras' April 2019 opinion.

Substantial evidence does not support the ALJ's consideration of Dr. Eiras' April 2019 opinion. An ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, an ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli*, 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[7] the applicable regulation eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity

---

[7] As previously noted, Plaintiff's application was filed on March 11, 2019.

with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2). The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

In the present case, the ALJ discounted Dr. Eiras' April 2019 opinion because "her findings are not consistent with the claimant's generally normal physical and mental status examinations, generally normal objective testing/studies and broad range of daily activities, some of which were apparently not disclosed to Dr. Eiras." R. 25. However, the ALJ's step four discussion does not identify the "generally normal physical . . . examinations[.]" R. 21–26.

14

Instead, as previously discussed, the ALJ recognized that Plaintiff suffered from, *inter alia*, bilateral lower extremity neuropathy, fingertip paresthesia, fatigue, and weakness. R. 22–23.

The ALJ also relied on "generally normal objective testing/studies" in discounting Dr. Eiras' April 2019 opinion. R. 22. It is true that the evidence of record includes the February 2019 normal electrocardiogram and the echocardiogram that reflected only mild findings, and the March 2019 EKG that revealed normal sinus rhythm with some T-wave abnormalities (but without any acute ischemic changes). *Id.* However, it is not apparent that these cardiac studies are at all relevant to Plaintiff's established bilateral lower extremity neuropathy, fingertip paresthesia, fatigue, and weakness flowing from Plaintiff's diabetic neuropathy and Lyme disease. R. 22–23; *cf. Holler v. Barnhart*, 102 F. App'x 742, 744 (3d Cir. 2004) ("However, the ALJ does not explain how Dr. Hainley's findings that [claimant] Holler had only 'mild degenerative changes,' 'normal range of motion,' 'full motor strength,' 'normal reflexes,' 'no atrophy' and 'a normal gait and station,' were inconsistent with her opinion that Holler could only do light work. Nor does he adequately consider that Dr. Tran also opined that Holler could do only light work given these findings.").

To the extent that the ALJ also relied on Plaintiff's "broad range of daily activities, some of which were apparently not disclosed to Dr. Eiras," R. 25, that reliance is unavailing. The ALJ expressly described these "daily activities" as "boating (although infrequently per his testimony), vacationing out-of-state, performing work requiring walking 6-7 miles per day and owning liquidation and telemarking businesses, regularly attending at least the liquidation warehouse and also going to the Hard Rock Casino." *Id*. As an initial matter, as the ALJ found, Plaintiff's boating was only "infrequent[ ]" and not "daily." *Id*. The ALJ also referred to an "out-of-state" vacation in March 2019, R. 21, but the record reveals that Plaintiff complained of shortness of

15

breath at that time. R. 410. Plaintiff points out that the ALJ failed to mention that walking six to seven hours per day at work resulted in Plaintiff having "bad foot pain even after he is done and sitting for the day." R. 722. In any event, however, the ALJ failed to explain how any of these "daily activities" are "not consistent" with Dr. Elias' April 2019 opinion limiting Plaintiff to, *inter alia*, occasionally lifting and carrying only up to 25 pounds. R. 25. Stated differently, it is not apparent to the Court—and the ALJ failed to explain—how these activities establish that Plaintiff can perform medium exertional work, which requires an ability to lift up to 50 pounds and to frequently lift and carry up to 25 pounds. *See id.*; *see also* 20 C.F.R. § 404.1567(c); *Holler*, 102 F. App'x at 744 ("The ALJ does not explain why he found that Holler's activities [cooking, taking walks, feeding and bathing her dogs, performing household chores, shopping, driving, singing in her church's choir and acting as the church's treasurer] were inconsistent with an inability to work at the medium level although both doctors account for Holler's activities and still conclude that Holler was capable of light work at most. Rather, the ALJ appears to have concluded that he could better interpret Holler's history than both of the physicians of record."); *Rosario v. Kijakazi*, No. 22-CV-4311, 2023 WL 6847564, at *12 (E.D. Pa. Oct. 17, 2023) ("To the extent that the ALJ relied upon Plaintiff's jogging/running and playing volleyball referenced in the paragraph of the decision at issue, it is unclear how participation in these activities would establish an ability to perform medium but not light work, as the ALJ found, because these activities do not involve substantial lifting or carrying and 'the primary . . . difference between light work and medium work is the lifting and carrying weight requirements[,]' specifically how often a claimant can lift and carry weight between 10 and 50 pounds, if at all.") (citations omitted); *Orlando v. Kijakazi*, No. CV 21-1431, 2023 WL 2530318, at *5 (E.D. Pa. Mar. 15, 2023) ("Nothing in either her kitchen or sales activity, then, would support the ALJ's finding that

16

she could lift and carry 25-lb. items for up to 6 hours per workday and carry 50-lb. items for up to 2 hours per workday. We cannot agree with the Commissioner that the ALJ's finding that Orlando maintained an RFC to perform work at the medium exertional level was established in this record. Rather, we find that no 'reasonable mind' would accept the evidence in this record as supporting such a conclusion."); *Khon v. Barnhart*, No. CIV.A.03-5122, 2004 WL 2203740, at *9 (E.D. Pa. Sept. 3, 2004) ("There does not appear to be any objective medical evidence supportive of a conclusion of medium exertional capacity, that is, ability to lift fifty pounds occasionally and twenty-five pounds frequently."). In short, the Court cannot find that Plaintiff's activities of daily living provide substantial support for the ALJ's rejection of Dr. Eiras' limitations of physical functioning in her April 2019 opinion.

This Court cannot conclude that the ALJ's errors in failing to account for all Plaintiff's physical symptoms and in discounting Dr. Eiras' April 2019 opinion are harmless. For example, if accepted, the April 2019 opinion would establish that Plaintiff was incapable of medium exertion. As Plaintiff points out, a person of advanced age and capable of only light work would be deemed disabled under the Medical-Vocational Guidelines. *Plaintiff's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, p. 13; *see also* R. 26 (finding that Plaintiff, 61 years old, was of advanced age on the date on which he was last insured for benefits); 20 C.F.R. § 404.1563(e) ("Person of advanced age. We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older)."); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06; *Douthett v. Saul*, No. CV 19-885, 2020 WL 5077453, at *3 (W.D. Pa. Aug. 26, 2020) ("Here, the ALJ found that Plaintiff could perform medium work, which Plaintiff points out became outcome determinative because, as an

individual of advanced age, if he had been found to be capable of performing light work instead, the Medical Vocational Grids would have directed a finding of disability. . . . Moreover, the RFC in this case contained additional limitations, and while the ALJ discussed the evidence of record generally in his explanation of the RFC, he did not specifically indicate how he reached the finding that Plaintiff could perform medium work or the findings of Plaintiff's additional limitations.") (citations omitted).

Under these circumstances, remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits.[8] *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived

---

[8] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's physical impairments, Dr. Eiras' April 2019 opinion, and the RFC, the Court does not consider those claims.

at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded for further consideration of these issues.

VI.     **CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 2, 2024                                              *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE